UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GAGE D. DODSON,         )
                               )
        Plaintiff,       )
                               )
    v.                 )     No.  4:20 CV 625 CDP
                               )
KILOLO KIJAKAZI, Acting    )
Commissioner of Social Security,[1] )
                               )
        Defendant.     )

## MEMORANDUM AND ORDER

Plaintiff Gage D. Dodson brings this action under 42 U.S.C. §§ 405 and

1383 seeking judicial review of the Commissioner's final decision denying his

claims for child's insurance benefits (CIB) under Title II of the Social Security

Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under

Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  Because the Commissioner's final

decision is supported by substantial evidence on the record as a whole, I must

affirm the decision.

### Procedural History

On August 13, 2015, the Social Security Administration denied Dodson's

June 2015 applications for CIB and SSI in which he claimed he became disabled

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.  She is substituted for former Commissioner Andrew Saul as defendant in this action.  *See* Fed. R. Civ. P. 25(d).

on April 14, 2015, at 20 years of age because of obsessive compulsive disorder (OCD), social anxiety, and depression.  A hearing was held before an administrative law judge (ALJ) on July 21, 2017; and on January 2, 2018, the ALJ entered a decision denying Dodson's claims for benefits.  The Appeals Council granted Dodson's request to review the ALJ's decision and remanded the matter to the ALJ for further consideration.  Upon remand, a hearing was held on April 1, 2019, at which Dodson and a vocational expert (VE) testified.  On May 7, 2019, the ALJ entered a decision denying Dodson's claims for benefits, finding that VE testimony supported a conclusion that Dodson could perform work that exists in significant numbers in the national economy.  On March 23, 2020, the Appeals Council denied Dodson's request for review of the ALJ's decision.  The ALJ's May 2019 decision is thus the final decision of the Commissioner.

In this action for judicial review, Dodson contends that the ALJ failed to follow the Appeals Council's directives set out in its remand order.  Dodson also claims that the ALJ's decision is not supported by substantial evidence on the record as a whole, specifically arguing that the ALJ improperly evaluated the consistency of his subjective statements, improperly weighed the opinion evidence of record, and improperly relied on VE testimony that was inconsistent with the limitations set out in his residual functional capacity (RFC).  Dodson asks that I reverse the ALJ's decision and remand for further consideration.

For the following reasons, I will affirm the ALJ's decision.

## Medical Records and Other Evidence Before the ALJ

Plaintiff Dodson is a young man with a history of mental impairments, including OCD, anxiety, and depression.  Dodson's treating general physician, Dr. Emily Doucette, first prescribed Celexa for these impairments in September 2015, and Dodson experienced significant improvement when compliant.  He remained at the same dosage of this medication into 2019 and continued to obtain benefit from it.  Although psychiatric care and psychological counseling were often recommended, Dodson never established such care.  He underwent several consultive psychological evaluations, however, for disability determinations and for Medicaid eligibility.  Dodson also has a history of chronic urticaria (hives), for which he regularly sought and obtained care from treating physicians, specialists, and urgent care facilities.

With respect to medical records and other evidence of record, I adopt Dodson's recitation of facts set forth in his Statement of Material Facts (ECF 19) as admitted and clarified by the Commissioner (ECF 26-1).  I also adopt the Commissioner's Statement of Additional Facts (ECF 26-2), which Dodson does not dispute.  These statements provide a fair and accurate description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for benefits under the Social Security Act, Dodson must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). To be entitled to child's insurance benefits on the earnings record of a parent, Dodson must show that his disability began before he turned 22 years old.  42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a)(5).

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).  If the claimant has nonexertional limitations, the

Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert.  *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.     The ALJ's Decision

The ALJ determined that Dodson had not attained 22 years of age as of April 14, 2015, the alleged onset date of disability, and that he had not engaged in

substantial gainful activity since that time.  The ALJ found that Dodson's OCD, generalized anxiety disorder, panic disorder, major depressive disorder (MDD), bipolar depression, autism spectrum disorder, and attention deficit hyperactivity disorder (ADHD) were severe impairments but that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15-16.)[2]  The ALJ found that Dodson had the RFC to perform work at all exertional levels but was limited to simple, routine, and repetitive tasks; could tolerate few changes in the work setting; could have only occasional interactions with supervisors and coworkers; and could have no contact with the general public.  (Tr. 18.)

Considering Dodson's RFC, age, education, and work experience, the ALJ determined that vocational expert testimony supported a conclusion that Dodson could perform work as it exists in significant numbers in the national economy, and specifically, as a laundry worker, industrial cleaner, and routing clerk.  The ALJ thus found that Dodson was not under a disability from April 14, 2015, through the date of the decision.  (Tr. 22-23.)

---

[2] The ALJ also determined that Dodson's chronic urticaria and acne vulgaris were not severe impairments.  (Tr. 20.)  Dodson does not challenge this determination.

C.    <u>Consistency of Subjective Statements of Symptoms</u>[3]

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective statements of symptoms with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairment(s). SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of his

---

[3] In 2017, the Social Security Administration issued a new ruling that eliminated the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record.  *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including what are familiarly known as "the *Polaski* factors," that is, the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted).  *See also* 20 C.F.R. §§ 404.1529, 416.929.  If the ALJ finds that the statements are inconsistent with the evidence of record, she must make an express determination and detail specific reasons for the weight given the claimant's testimony.  SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). While an ALJ must acknowledge and consider the *Polaski* factors, she need not discuss each one before discounting a claimant's subjective statements.  *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

Here, after finding at Step 3 of the sequential analysis that Dodson's impairments did not meet the criteria for listing-level disability, the ALJ evaluated Dodson's statements of symptoms and assessed his RFC.  The ALJ properly cited

and considered the *Polaski* factors and made specific findings that Dodson's claimed symptoms were inconsistent with the record.  Because these findings are supported by substantial evidence on the record as a whole, I must defer to the ALJ's determination.  *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

The ALJ noted that Dodson was first prescribed Celexa in September 2015 and reported to various healthcare providers thereafter that the medication was effective and "really helps," and that his symptoms had "much improved."  (*See* Tr. 611-12, 685, 810-17.)  The record shows that when he was compliant with his medication, Dodson exhibited appropriate mood and affect, was in no distress, and showed no anxiety or nervousness during several examinations.  (*See*, *e.g.*, Tr. 493, 545, 604, 681, 686, 691-93, 808-09, 812, 816.)  *See Halverson,* 600 F.3d at 933 (ALJ may consider fact that several examinations showed no abnormalities).  And throughout the several-year period of taking Celexa, Dodson's dosage of the medication never increased.  Evidence that an impairment can be controlled by treatment or medication is inconsistent with a claim that the impairment is disabling.  *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014).

The ALJ also noted that Dodson missed several counseling appointments and did not see a psychiatrist despite receiving several recommendations to do so, and indeed after being referred by Dr. Doucette.  *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (claimant's inability to follow treatment

recommendations weighed against his credibility); *Brown v. Barnhart*, 390 F.3d

535, 542 (8th Cir. 2004) (ALJ properly discounted subjective complaints for, *inter*

*alia*, claimant's "continuing failure to comply with prescribed treatments.").  And,

as noted by the ALJ, Dodson did not return to Dr. Doucette for nearly a year after

she first prescribed Celexa – he took his stepfather's medication during that year

after he ran out of Celexa, and he returned to Dr. Doucette in August 2016 only

when he no longer had access to his stepfather's medication.  (Tr. 432-33.)  In

evaluating a claimant's subjective complaints, the ALJ may consider the claimant's

misuse of medication.  *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003).

Throughout the decision, the ALJ addressed Dodson's daily activities,

including taking online classes for his GED, interacting with friends weekly,

playing video games and watching movies, creating artwork, and doing yardwork.

The ALJ also addressed the lack of objective medical evidence of disability during

the relevant period, and specifically that Dodson never sought or required inpatient

care or hospitalization for his mental impairments.  And, as noted above, other than

consultative examinations and medication refills, there is little evidence of regular

treatment for Dodson's mental conditions.

The ALJ thoroughly reviewed Dodson's testimony and other evidence of

record and, in a manner consistent with and as required by *Polaski*, evaluated

Dodson's statements of symptoms and articulated specific reasons to find that they

- 11 -

were inconsistent with the record.  Because this determination is supported by good reasons and substantial evidence on the record as a whole, I must defer to it. *Julin*, 826 F.3d at 1086.

D.    Opinion Evidence

The record contains opinion evidence from Amy Marty, Ph.D., a psychologist who conducted a one-time consultative psychological evaluation in June 2015; from Alison Burner, M.A., a psychologist who conducted a one-time consultative psychological evaluation in July 2015; from Gretchen Brandhorst, Psy.D., a non-examining psychological consultant with disability determinations; and from Steven Adams, Psy.D., a psychologist who conducted a one-time consultative psychological evaluation in June 2018.  The record also contains records from treating and examining healthcare providers, including Craig Voorhees, Ph.D., a psychologist who diagnosed Dodson with autism spectrum disorder in August 2015.  In her written decision, the ALJ accorded some weight to the opinions of Drs. Marty and Brandhorst, and little weight to the opinions of Ms. Burner and Dr. Adams.  The ALJ acknowledged the diagnosis rendered by Dr. Voorhees but did not evaluate Dr. Voorhees's treatment records as opinion evidence.  Dodson contends that the ALJ improperly weighed the evidence obtained from these medical sources.

Medical opinions are statements from acceptable medical sources that reflect

judgments about the nature and severity of a claimant's impairment(s), including his symptoms, diagnoses, and prognoses; his physical and mental restrictions; and what he can still do despite his impairments.  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) (2019).[4]  The Commissioner must consider various factors in determining what weight to accord medical opinion evidence, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the source provides support for their findings, whether other evidence in the record is consistent with the source's findings, the source's area of specialty, and the source's familiarity with the claimant's case file and with Social Security programs.  20 C.F.R. §§ 404.1527(c), 416.927(c).  It is the function of the ALJ and not this Court to resolve conflicts between medical opinions.  *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008).

1.     *Dr. Marty*

Dr. Marty conducted a psychological evaluation on June 4, 2015, for the Department of Social Services, Family Support Division.  (Tr. 796-800.)  She noted that Dodson currently took no medications.  Mental status examination showed that Dodson was anxious, hesitant, and mildly depressed.  He had poor eye

---

[4] In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence.  For evaluation of medical opinion evidence, the new rules apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.  Because the claims under review here were filed before March 27, 2017, I apply the rules set out in 20 C.F.R. §§ 404.1527, 416.927.

contact.  His affect was flat and his mood congruent.  Dr. Marty also observed, however, that Dodson was cooperative, spontaneous, relevant, and logical.  He easily established rapport and was attentive and responsive.  He had no problems in receptive or expressive language ability; his speech was "normal"; and he exhibited no tangential thoughts, flight of ideas, or perseveration.  Dr. Marty noted that Dodson had no thought disturbances, preoccupations, or perceptual distortions.  Dodson's flow of information was logical and sequential, and he denied suicidal ideation.  He was oriented in all spheres.  His memory was intact, and his judgment was "good."  He was able to perform simple calculations without difficulty.

At the conclusion of her evaluation, Dr. Marty diagnosed Dodson with OCD, panic disorder with agoraphobia, and MDD–recurrent, mild.  As to Dodson's current level of daily functioning, Dr. Marty opined that OCD and social phobia made it difficult for Dodson to independently complete activities of daily living; that Dodson appeared to be socially isolated but got out of the house once a week to visit friends; that Dodson could care for his personal needs; and that he "evidenced an ability to maintain adequate attention and concentration with appropriate persistence and pace[.]"  (Tr. 799.)  Dr. Marty opined that Dodson's prognosis was "[g]uarded to fair with appropriate mental health treatment.  Mood symptoms significantly impair social and occupational functioning."  (*Id.*)

In her written decision, the ALJ noted Dr. Marty's observations that Dodson

- 14 -

was attentive, polite, established rapport easily, and performed simple calculations without difficulty.  The ALJ also noted Dodson's report to Dr. Marty that he spent time with friends and could care for his personal needs.  Finally, the ALJ noted Dr. Marty's conclusion that Dodson demonstrated adequate concentration, persistence, and pace throughout the evaluation.  In according some weight to Dr. Marty's opinion, the ALJ noted that she was a medical expert in mental health but had examined Dodson on only one occasion.  (Tr. 20.)  Dodson complains that the ALJ summarized only that portion of Dr. Marty's report that supported a finding of non-disability and ignored other relevant observations, such as Dodson's poor eye contact, mildly depressed mood, and anxious and hesitant presentation.

"Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence." *Beamer v. Saul*, No. 2:18-CV-00094 JAR, 2020 WL 1511350, at *7 (E.D. Mo. Mar. 30, 2020).  *See also Couch v. Berryhill*, No. 2:18 CV 46 DDN, 2019 WL 1992623, at *6 (E.D. Mo. May 6, 2019).  Here, substantial evidence supports the ALJ's decision to accord Dr. Marty's opinion some weight.  Among the factors in weighing opinion evidence is the medical source's area of specialty and the length of the treatment relationship, which the ALJ properly considered.  Further, while I agree with Dodson that an ALJ may not cherry-pick evidence from

the record that only supports her conclusion, *see Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019), I disagree that that is what the ALJ did here with regard to Dr. Marty's opinion.  A review of the ALJ's decision *in toto* shows that the ALJ referred to those portions of Dr. Marty's report that were consistent with and supported by other substantial evidence of record, including Dodson's reports to other examiners that he frequently socialized with friends and had good relationships with people; other examiners' observations that Dodson's attention and concentration were intact and adequate; and other reports and evaluations that showed Dodson's general fund of knowledge was "high average," his memory was intact, and he took online classes to prepare for the GED.  To the extent Dr. Marty observed that Dodson also had poor eye contact, was mildly depressed, and was anxious and hesitant during the evaluation, the ALJ noted in her decision that the record showed Dodson to consistently have normal mental status examinations after starting and maintaining compliance with his medication.  Notably, Dr. Marty's evaluation took place months before such medication was prescribed.

Substantial evidence on the record as a whole supports the weight given to Dr. Marty's opinion.

2.    *Ms. Burner*

Ms. Burner conducted a psychological evaluation on July 15, 2015, for disability determinations.  (Tr. 409-14.)  She noted that Dodson currently took no

medications.  With regard to his OCD, Dodson reported that he had obsessive

thoughts and compulsive behaviors relating to his fear of contamination and his

routines of completing things in a certain order.  As to his depression, Dodson

reported feelings of helplessness and hopelessness, and of having crying spells and

suicidal ideation.  Dodson reported that social anxiety caused him to fear crowds

and people in general, and that he avoided going to malls, movies, or to friends'

houses because of this fear.

Mental status examination showed that Dodson's eye contact and affect

were within normal limits, there was no psychomotor agitation, his speech was

clear, and social language functioning was within normal limits.  Dodson was

oriented in all spheres and could discuss current events, recall childhood memories,

and recall specific actions from the prior day.  Burner considered Dodson's

immediate memory to be low average and his recent and past memory to be

adequate.  Dodson's information fund was average, and his calculations were

primarily correct above a functional level.  His mental control was average, and his

abstract thinking was within normal limits.  Burner considered Dodson's insight

and judgment to be within the average range, and his attention and concentration

were adequate.  Burner noted that Dodson was cooperative throughout the

evaluation process.

Upon conclusion of this examination, Burner opined that Dodson was

"average to low average with regard to numerical reasoning, mental control, social judgment, and long and short term memory and below average in the area of abstract reasoning." (Tr. 413.) She opined that Dodson's "psychological symptomology . . . would negatively affect obtaining or maintaining employment at this time," and she concluded that Dodson had a "significant impairment" in all domains of functioning, that is, activities of daily living; social functioning; concentration, pace, persistence; and decompensation in a work setting. (*Id.*) Burner also opined that Dodson "would have absenteeism and difficulty getting along with others." (*Id.*)

The ALJ accorded Burner's opinions little weight, noting that her statements of "significant impairment" did not correlate with Social Security definitions of mild, moderate, or extreme limitations and thus were too vague to provide a basis for an RFC determination. The ALJ also found that Burner's statements that Dodson would experience absenteeism and difficulty getting along with others were likewise vague given that Burner provided no degree to which Dodson would experience such difficulties. Finally, the ALJ noted that Burner's statements were inconsistent with other substantial evidence of record, and particularly evidence of Dodson's responsiveness to treatment, his normal mental status examinations, and his lack of inpatient psychiatric treatment. (Tr. 20-21.)

Inconsistency with other evidence alone is sufficient to discount the opinion

of a medical source.  *Goff*, 421 F.3d at 790-91.  As discussed above, there is

substantial evidence of record showing that Dodson's mental impairments

significantly improved after he started and complied with his medication regimen.

His mental status examinations were consistently normal and, given the

effectiveness of his medication, no changes were made to his treatment plan.

Given that the opinion of this one-time examiner – which notably was rendered

before Dodson obtained regular treatment for his impairments – is inconsistent

with other substantial evidence of record, the ALJ did not err in according little

weight to the opinion.  *See Brace v. Astrue,* 578 F.3d 882, 886 (8th Cir. 2009)

(ALJ does not err in discounting opinion evidence where record shows claimant

was not undergoing effective treatment at time when physician opined that

claimant's condition was disabling).

> 3. *Dr. Voorhees*

Dodson visited Dr. Voorhees on August 7, 2015.  (Tr. 419-25.)  Dr.

Voorhees noted that Dodson was a patient in 2011 and had returned for therapy.

During this visit, Dr. Voorhees conducted a psychological evaluation and

administered several tests from which he determined that Dodson showed no

indication of a substance abuse problem, that there was no strong suggestion of

bipolar disorder, that he was in the mild range for depression, and that he had

autism spectrum disorder.  Dr. Voorhees reported that Dodson needed cognitive

therapy, needed to learn relaxation techniques to reduce his stress level, and needed to see a psychiatrist for medication.  Dodson returned to Dr. Voorhees on August 29 and September 12, but not thereafter.  (Tr. 425-26.)

In her written decision, the ALJ acknowledged Dodson's treatment with Dr. Voorhees and his diagnosis of autism spectrum disorder (Tr. 18), but she did not consider Dr. Voorhees as a source that provided opinion evidence.  (*See* Tr. 20-21.) Dodson appears to contend that the ALJ erred in failing to consider the psychological evaluation as opinion evidence and failed to fully consider the diagnosis of autism spectrum disorder.  A review of the evaluation shows, however, that Dr. Voorhees provided only a diagnosis and did not express any judgment about the severity of Dodson's impairments, any restrictions imposed by his impairments, or what he can still do despite his impairments.  The ALJ therefore did not err in failing to consider the psychological evaluation as opinion evidence under the Regulations.  *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *Bolin v. Saul*, No. 4:18-CV-1052 NAB, 2020 WL 2799212, at *6 (E.D. Mo. May 29, 2020) (ALJ did not err in failing to consider examination that resulted in diagnoses as opinion evidence because physician did not address work-related limitations or limitations on activities of daily living).  And a mere diagnosis does not presumptively indicate that a claimant has disabling limitations.  *Cf. Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014) (mere diagnosis of condition named in

listing does not qualify claimant for presumptive disability).

    4.    *Dr. Brandhorst*

Dr. Brandhorst is a psychological consultant with disability determinations. On August 13, 2015, based upon her review of the evidence of record at that time, Dr. Brandhorst opined that Dodson retained the ability to engage in simple, repetitive tasks, and would work best away from others. (Tr. 73, 84.) In according some weight to this opinion, the ALJ noted that although Dr. Brandhorst did not examine Dodson, she was a medical expert in mental health with a familiarity of Social Security law and rendered an opinion that was consistent with the medical evidence of record. (Tr. 21.)

Dodson argues that the ALJ erred in according some weight to Dr. Brandhorst's opinion given that it was rendered four years before the ALJ's decision and because Dr. Brandhorst did not have access to the additional evidence of record obtained after August 2015. I agree with Dodson that, generally, an ALJ cannot rely on remote evidence to determine a claimant's abilities, *see Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995), and must afford less weight to the opinion of a non-examining consultant who did not have access to relevant medical records, *see McCoy v. Astrue,* 648 F.3d 605, 616 (8th Cir. 2011). But here, there is no evidence that Dodson's condition deteriorated after Dr. Brandhorst rendered her opinion and, indeed, the record shows that Dodson's mental impairments in fact

improved because of his taking psychotropic medication, especially when he was compliant.  Because there is no evidence that Dodson's mental health deteriorated from the time Dr. Brandhorst rendered her opinion to the time of the hearing, the ALJ could properly accord some weight to the opinion.  *Beamer*, 2020 WL 1511350, at *9 (citing *Frankl*, 47 F.3d at 937-39).

And it is important to note that the ALJ accorded only some weight to this opinion and did not rely on it exclusively to support her finding of non-disability. A review of the ALJ's decision *in toto* shows that she reached her conclusions after considering and weighing all the evidence of record, as required.  When taken together with the record as a whole, a non-examining consultant's medical opinion can be considered when forming the basis of an ALJ's opinion.  *See Harvey v. Barnhart,* 368 F.3d 1013, 1016 (8th Cir. 2004) ("[T]he ALJ in this case did not rely solely on [the non-examining consultant's] opinion to reach his conclusions. Rather, the ALJ relied on [the consultant's] opinion as one part of the record, which, as a whole . . . provides substantial support for his findings."); SSR 96-6P, 1996 WL 374180, at *1-3 (Soc. Sec. Admin. July 2, 1996) (an ALJ must treat expert opinion evidence of non-examining providers in conjunction with the other evidence of record).

The ALJ did not err in according some weight to Dr. Brandhorst's opinion and in considering this opinion evidence as part of the record in determining

whether Dodson was disabled.

5.    *Dr. Adams*

On June 14, 2018, Dr. Adams and Victoria Britton, M.A., LPC, conducted a
psychological evaluation in conjunction with Dodson's application for Medicaid
eligibility.  (Tr. 710-13.)  Dodson reported to the evaluators that he had been
diagnosed with Asperger's disorder, ADHD, OCD, MDD, and social anxiety.  He
reported having depressed mood, insomnia, obsessive thoughts and compulsive
behavior, anxiety, poor concentration, decreased energy, racing thoughts,
occasional suicidal thoughts, and diminished interests.  He also reported feeling
worthless and helpless, and that he was socially withdrawn and avoided crowds.
The evaluators noted that Dodson currently took citalopram[5] and Rexulti[6] for his
mental impairments.  Dodson reported that he currently had five close friends who
were "great" and that he gets together with them once a week.  He also reported
that he watches movies and plays video games with his friends and was planning to
attend a concert with his friends during the upcoming weekend.  (Tr. 711.)

Mental status examination showed that Dodson was oriented in all spheres.
He was alert and responsive, and rapport was easily established.  Eye contact was

---

[5] Celexa is the brand name for citalopram.  *MedlinePlus*, Citalopram, https://medlineplus.gov/
druginfo/meds/a699001.html (last revised Jan. 15, 2018).

[6] There is no indication in the record as to when Dodson was prescribed Rexulti or by whom.

poor.  The evaluators noted that Dodson had a depressed mood, and his affect appeared consistent with conversation and expression.  Dodson's general fund of information was considered to be at the high average level, and his intelligence level was estimated to be average.  Verbal concepts were low average, and abstract concepts were average.  Judgment and impulse control were considered to be fair. (Tr. 712.)

The evaluators diagnosed Dodson with generalized anxiety disorder and MDD–single episode, moderate.  Autism spectrum disorder was to be ruled out. The evaluators opined that Dodson "seem[ed] able" to understand and remember simple instructions but did not seem able to sustain his concentration and persistence on simple tasks.  They also opined that Dodson did not seem able to interact in moderately demanding social situations and did not seem able to adapt to a typical work environment.  They recommended that Dodson continue with psychiatric care and psychotherapy.  (Tr. 713.)

The ALJ accorded little weight to these opinions, noting that they were inconsistent with the observations made during the evaluation itself – and specifically, Dodson's report of good relationships and weekly interactions with his friends, his fair judgment and impulse control, and his average intelligence and high average fund of knowledge.  The ALJ also noted that the evaluators' opinions were inconsistent with other evidence of record that showed Dodson's conditions

improved with treatment.  (Tr. 21.)

A physician's opinion may be given little weight because of its internal inconsistencies.  *Anderson*, 344 F.3d at 812-13; *see also Wagner*, 499 F.3d at 849-50 (and cases cited therein) (physician opinions that are internally inconsistent are entitled to less deference).  Here, as noted by the ALJ, the evaluators' opinions are inconsistent with their own findings and observations made during the evaluation.  The evaluators' opinion that Dodson did not "seem able" to sustain concentration and persistence on simple tasks is inconsistent with Dodson's report to them that he played video games and watched movies, *see Eich v. Saul*, No. 4:19CV1686 HEA, 2020 WL 7078684, at *6 (E.D. Mo. Dec. 3, 2020) (observation that claimant's "concentration was good" was supported by evidence that claimant played video games); *Vogler v. Saul*, No. 1:20CV01 CDP, 2020 WL 6287412, at *7 (E.D. Mo. Oct. 27, 2020) (claimant's ability to play video games and watch movies supported ALJ's conclusion that claimant was only mildly limited in concentration, persistence, or pace); *Hewitt v. Colvin*, No. 2:13CV104 ACL, 2015 WL 1286309, at *11, 13 (Mar. 20, 2015) (playing video games requires a level of concentration); as well as the evaluators' own observations that Dodson worked at an average pace during the evaluation, performed mental tasks without error, and was able to correctly calculate simple math problems without paper.  (*See* Tr. 712.)  In addition, the evaluators' opinion that Dodson did not seem able to interact in

moderately demanding social situations is inconsistent with Dodson's report to them that he regularly socializes with a group of friends and planned to attend an upcoming concert.  Nevertheless, the ALJ found that Dodson had moderate limitation in his ability to interact with others and the RFC reflects this limitation. *See Goudeau v. Saul*, No. 4:19-CV-2476 SRC, 2020 WL 7023936, at *5 (E.D. Mo. Nov. 30, 2020) (moderate limitation in the area of interacting with others is reflected in RFC limitations to occasional interactions with coworkers and supervisors and no contact with the general public).

The ALJ did not err in according little weight to the opinion of Dr. Adams and Ms. Britton.

E.    <u>VE Testimony</u>

At the administrative hearing held on April 1, 2019, the ALJ asked the VE to assume an individual limited to, *inter alia*, simple, routine, and repetitive tasks.  In response, the VE testified that such a person could perform work as laundry worker, as set out in the *Dictionary of Occupational Titles* (DOT) at No. 361.684-014; as an industrial cleaner, as set out at DOT No. 381.687-018; and as a routing clerk, as set out at DOT No. 222.687-022.  (Tr. 42-43.)  According to VE testimony and to the DOT, such work requires Level 2 reasoning, which involves the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Moore v. Astrue*, 623 F.3d 599, 604 (8th

Cir. 2010) (internal quotation marks and citation omitted).  Dodson contends that the VE's testimony that he can perform such work conflicts with his RFC limitation to only "simple" tasks, and thus that the ALJ erred in relying on this testimony to find that Dodson was not disabled.

In *Moore*, the Eighth Circuit addressed a similar argument that Dodson raises here:  that a finding that a claimant can perform work requiring Level 2 reasoning as described by the DOT is inconsistent with an RFC that limits him to performing only simple tasks.  Noting that the DOT describes Level 1 reasoning as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions," the Eighth Circuit observed that the hypothetical question posed to the expert in *Moore* "did not limit 'simple' job instructions to 'simple *one or two-step* instructions' or otherwise indicate that Moore could perform only occupations at a DOT Level 1 reasoning level."  *Moore*, 623 F.3d at 604 (emphasis in original).

> Indeed, the Level 2 reasoning definition refers to "detailed but *uninvolved*" instructions.  The dictionary defines "uninvolved" as "not involved," and in turn defines "involved" as "complicated, intricate." There is no direct conflict between "carrying out simple job instructions" for "simple, routine and repetitive work activity," as in the hypothetical, and the vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate.

*Id.* (internal citations omitted) (emphasis in *Moore*).

As in *Moore*, the ALJ here likewise did not limit Dodson's reasoning

abilities to a level commensurate with Level 1 reasoning as defined in the DOT. Although the ALJ limited Dodson to performing simple tasks, she did not restrict him to performing tasks that involve only one- or two-step instructions. Accordingly, there was no conflict between the ALJ's RFC determination and the VE's response to the hypothetical based on that RFC. *Moore*, 623 F.3d at 604. The ALJ did not err in relying on the VE's testimony.

F.   Appeals Council Order

In its remand order, the Appeals Council instructed the ALJ to, *inter alia*, further consider Ms. Burner's examination report; obtain additional evidence concerning Dodson's mental impairments; and evaluate Dodson's mental impairments in accordance with 20 C.F.R. §§ 404.1520a and 416.920a. Dodson claims that the ALJ failed to comply with these directives. For the following reasons, I disagree.

As described above, Burner conducted a consultative psychological evaluation in July 2015 from which she made several findings and opined that Dodson was significantly impaired in all domains of functioning. In her January 2018 decision, however, the ALJ did not acknowledge Burner's opinions and indeed did not even mention her by name. Instead, the ALJ only referenced some of Burner's observations made during the evaluation. And it appears that the ALJ did not consider any of Burner's opinions at all because she referenced Dr.

Brandhorst's opinion as the only opinion of record to be weighed.  (*See* Tr. 101-
02.)  In her May 2019 decision after the Appeals Council's remand, the ALJ
referenced Burner's observations again, but she also addressed Burner's opinions
that Dodson suffered significant impairments in the four domains of functioning.
(*See* Tr. 20.)  As set out above, the ALJ considered these opinions and determined
to accord them little weight given their inconsistency with other substantial
evidence of record.  The Appeals Council directed the ALJ to further consider
Burner's report, and the ALJ did.  Accordingly, I cannot say that the ALJ did not
comply with this directive.

　　　The Appeals Council also directed the ALJ to obtain additional evidence of
Dodson's mental impairments.  When the ALJ rendered her first decision in
January 2018, she had before her evidence of Dodson's medical history and
treatment dated through June 2017.  (*See* Medical Records Exh. Record, Tr. 107-
08.)  After remand, additional evidence relating to Dodson's mental and other
impairments was added to the record, including psychological treatment notes from
2018 and 2019 from Crider Health Center and Compass Health Network, as well
as a report from a consultative psychological evaluation that took place in June
2018.  Dodson's claim that the ALJ did not obtain additional evidence relating to
his mental impairments is not supported by the record.

　　　Finally, the ALJ evaluated Dodson's mental impairments in accordance with

20 C.F.R. §§ 404.1520a and 416.920a.  In cases involving mental impairments, these Regulations require the SSA to use a "special technique" at Steps 2 and 3 of the sequential analysis to evaluate the severity of a claimant's mental impairments and determine whether they meet or equal a listing.  20 C.F.R. §§ 404.1520a(d), 416.920a(d); SSR 96-8p, 1996 WL 374184 (Soc. Sec. Admin. July 2, 1996). Under this technique, an ALJ is required at these steps to rate the degree of a claimant's functional limitations in four broad areas of functioning and to incorporate in her decision pertinent findings and conclusions based on the technique.  20 C.F.R. §§ 404.1520a(c)-(e), 416.920a(c)-(e).  "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas[.]"  20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).  Here, the ALJ determined that Dodson's mental impairments were severe and caused mild to moderate limitations in the four domains of functioning.  She underwent and documented the required technique at Step 3 of the sequential analysis in determining that these severe impairments did not meet or equal a listing.  (Tr. 16-17.)  A review of the ALJ's use of the technique shows that she complied in all respects with the requirements of §§ 404.1520a(e)(4), 416.920a(e)(4).  Dodson's claim otherwise is denied.

## Conclusion

As thoroughly set out by the ALJ in her detailed decision, there was substantial medical and other evidence of record supporting her determination that Dodson had the RFC to perform work with restrictions that he engage in simple, routine, and repetitive tasks with limited contact with the public, coworkers, and supervisors in a work setting with few changes.  Accordingly, it cannot be said that the ALJ's decision is not supported by substantial evidence on the record as a whole.  I cannot reverse the decision even if substantial evidence may support a different outcome.  *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007) (even with "full awareness" of the "very real difficulties [claimant] appears to experience," the Court cannot reverse a decision that is based on substantial evidence).

For the reasons set out above on the claims raised on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination of non-disability.  Because substantial evidence on the record as a whole supports the ALJ's decision, the decision must be affirmed.  *Davis v. Apfel,* 239 F.3d 962, 966 (8th Cir. 2001).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and plaintiff Gage D. Dodson's complaint is dismissed with prejudice.

- 31 -

A separate Judgment in accordance with this Memorandum and Order is entered herewith.


_____

CATHERINE D. PERRY

UNITED STATES DISTRICT JUDGE


Dated this 9th day of September, 2021.